IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03401-M-RJ

| | |
|---|---|
| COLA HARRELL, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) ORDER<br>) |
| DEXTER HAYES, et al., | )<br>) |
| Defendants. | ) |

On November 4, 2022, Cola Harrell, a.k.a. Cola Terrell Harrell ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 8]. The court first DENIES AS PREMATURE the motion for discovery [D.E. 3], and the motion to subpoena an expert witness for trial [D.E. 10]. The court now conducts its initial review under 28 U.S.C. § 1915A and, for the reasons discussed below, dismisses the action.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff's Complaint:

Plaintiff generally alleges violations of his Eighth and Fourteenth Amendment rights at the Hertford County Detention Centner from "July 13, 2018 – September [sic]." Compl. [D.E. 1] at 5. Plaintiff names as defendants Sheriff Dexter Hayes ("Hayes") and the head of administration at the Detention Center, Officer Pillman ("Pillman") (collectively, "defendants"). Id. at 3.

Plaintiff specifically alleges he sustained a tendon injury in his right hand shortly prior to his arrest on July 13, 2018, a doctor at Roanoke Chowan Hospital put in temporary stitches and told him surgery needed to be done in 24 to 48 hours but, despite his requests, Hayes delayed his return to the hospital for surgery, and Pillman "stated that Hayes had already informed him and

2

the nursing staff to ignore [plaintiff's] complaints . . . pertaining to [his] injuries." Id. at 5–7. "A month later," plaintiff went back to the same doctor who stated that, because so much time had passed, "any proper function of [plaintiff's] hand is unlikely." Id. at 7. After the surgery was performed, plaintiff contends "the tendon snapped apart because of the time lapsed that prevent proper healing [sic]." Id. Plaintiff also contends his hand was "slightly infected" because Pillman and Hayes negligently failed to allow properly prescribed antibiotics and pain pills at the Detention Center. Id. "After almost 40 days, [plaintiff] was sent to Central Prison where he remained for another 30-40 days before being sent back to Roanoke Chowan Hospital for another surgery." Id. At Central Prison, he "was able to get the prescribed medication and physical therapy for the next 3 plus months before being sent back to Hertford County Jail with a stress ball to adequately exercise [his] hand." Id. at 7–8. Upon his return, "Hayes and Pillman's staff took the ball away." Id. at 8. Plaintiff asserts that he hasn't regained full function of his right hand and he suffers from nerve pain "shooting from [his] hand up [his] forearm." Id. Plaintiff states: "Due from the July 2018 incident date it took nearly 10 months before the actual healing and physical therapy could take place which by the middle of 2019 COVID had rampaged the county jails and prisons which shut down everything [sic]." Id. Plaintiff asserts that, during this time, he "was at the end of exhausting all remedies," and "the healing was complete," but, as the doctor predicted, he never regained complete mobility "because of the intentional delay in treatment." Id. Plaintiff also contends, "throughout 2019 and parts of 2022, the prison shut all access to various limited resources down [sic]," including mail pickup, and "COVID was really bad with the offenders and staff deaths." Id. Plaintiff states that he is "still without mobility of [his] right hand with shooting pain up [his] forearm because of Hayes and Pillman negligence [sic]." Id.

3

As to exhaustion, plaintiff acknowledges he did not file a grievance regarding the facts in this complaint because "there was no grievance process at Hertford County Detention that filed grievances [sic]." Id. at 9.

For relief, plaintiff seeks, *inter alia*, compensatory and punitive damages as well as declaratory and injunctive relief. Id.

## Discussion:

First, to the extent plaintiff seeks to raise claims premised on the purported negligence of Hayes and Pillman, such claims generally are not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995).

Next, to the extent plaintiff instead seeks to raise constitutional claims against Hayes and Pillman, his claims as to the delay of surgery and denial of medications plainly are time barred. Congress has not adopted a specific statute of limitations for § 1983 actions; rather, the statute of limitations is determined by the law of the state in which the action arose. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 388 (4th Cir. 2014). Section 1983 claims "are best characterized as personal injury actions," Wilson v. Garcia, 471 U.S. 261, 277 (1985), and are subject to state statutes of limitations. North Carolina personal-injury actions have a three-year statute of limitations. N.C. Gen. Stat. § 1-52(5); see Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161–62 & n.2 (4th Cir. 1991). The time for § 1983 claims generally accrues when the plaintiff knows or has reason to know of the injury underlying the action. Wallace, 549 U.S. at 391.

4

Here, plaintiff knew or had reason to know about his "cut tendon" and his need for surgery circa the date the injury occurred on July 13, 2018, and about the denial of needed medicines circa the dates such denials occurred between, approximately, July and September 2018. See Compl. [D.E. 1] at 5–7. Absent tolling, the three-year statute of limitations for § 1983 claims as to these alleged injuries expired well before the date plaintiff signed this complaint on October 23, 2022. See Wallace, 549 U.S. at 391.

Plaintiff does not show that he pursued his rights diligently as to these claims, or that the requisite "extraordinary circumstances" needed for tolling the statute of limitations exist. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (citation omitted)); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (discussing tolling); Hardin v. Straub, 490 U.S. 536, 538–39 (1985) (noting § 1983 claims rely on state-law tolling provisions); Shook ex rel. Shook v. Gaston Cnty. Bd. of Educ., 882 F.2d 119, 121 (4th Cir. 1989) ("When a state statute [of limitations] is borrowed . . . the federal court will also borrow the state rules on tolling."); see also Misenheimer v. Burris, 360 N.C. 620, 622, 637 S.E.2d 173, 175 (2006); Williams v. BCBS of NC, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003).

Plaintiff's unfamiliarity with the law, lack of legal representation, and incarcerated status also are insufficient grounds for tolling. United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004). Accordingly, plaintiff's claims against defendants as to the purported delay of surgery and denial of medications are dismissed as time barred. See Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 956 (4th Cir. 1995) (en banc) (finding dismissal appropriate if claim is time-barred

5

on its face), cert. denied, 516 U.S. 1177 (1996); see also Order [D.E. 14], Harrell v. Hayes, et al., No. 5:22-CT-03059-M (E.D.N.C. Oct. 5, 2022) (dismissing as time-barred plaintiff's similar claims regarding delay of surgery for his "cut tendon").

The court now turns to plaintiff's claims regarding the deprivation of his "stress ball" upon his return to the Detention Center. See Compl. [D.E. 1] at 7–8. Adding together the various stretches of time alleged in the complaint, this event appears to have occurred circa March 2019. Thus, for the above reasons, any claims arising from this event also appear to be time barred.

Alternatively, even if plaintiff's allegations regarding the deprivation of his "stress ball" are not time barred, plaintiff still fails to state a cognizable constitutional claim against defendants.

Courts evaluate the confinement conditions of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015). As a practical matter, however, the Due Process Clause analysis is materially indistinguishable from Eighth Amendment analysis. See Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001).

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere

6

negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

"Deliberate indifference" to a prisoner's "serious medical needs" violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Nevertheless, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (finding a defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."); De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (surviving initial review requires an inmate to plausibly allege both "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." (quotation and alterations omitted)); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (requiring that the prison official knew of and disregarded an "objectively serious condition, medical need, or risk of harm."). Beyond such actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation marks and citation omitted).

Presuming, without deciding, that the alleged deprivation of plaintiff's "stress ball" was objectively sufficiently serious, he still fails to state a viable supervisory liability claim against

7

defendants, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), or plausibly allege that defendants knew of, but disregarded, a substantial risk of serious harm to plaintiff, or otherwise acted with the requisite culpable state of mind, see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); Farmer, 511 U.S. at 837; Jackson, 775 F.3d at 178; De'lonta, 708 F.3d at 525; Iko, 535 F.3d at 241; Shakka, 71 F.3d at 166; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (requiring a § 1983 plaintiff to "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights," but finding mere knowledge of such a deprivation does not suffice (internal quotation marks omitted)). Accordingly, the court dismisses this aspect of the complaint for failure to state a claim upon which relief may be granted.

To the extent plaintiff instead seeks to raise claims regarding the COVID-19 pandemic between 2019 and 2022, see Compl. [D.E. 1] at 8, such claims belong in a different suit because they involve distinct facts, events, and defendants at different facilities, and plainly do not arise from the same "transaction or occurrence" as plaintiff's above claims against defendants. See Fed. R. Civ. P. 18 (discussing joinder of claims); Fed. R. Civ. P. 20(a)(2) (allowing joinder of defendants if, *inter alia*, the right to relief is asserted as arising out of the same transaction and questions of common fact apply to all defendants); see also George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits[.]"). Accordingly, the court dismisses these claims without prejudice but makes no findings as to plaintiff's likelihood of success in any such future action.

8

Finally, because plaintiff's complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015), and the court declines to exercise supplemental jurisdiction over any lingering state-law claims, see 28 U.S.C. § 1367(c)(3) (granting courts discretion to decline supplemental jurisdiction over a pendent State claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding the district court possesses "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

## Conclusion:

In sum, the court: DENIES AS PREMATURE the motion for discovery [D.E. 3], and the motion to subpoena an expert witness [D.E. 10]; DISMISSES the claims against defendants either as time-barred or for failure to state a claim; DISMISSES WITHOUT PREJUDICE the unrelated claims as to the COVID-19 pandemic; DECLINES to exercise supplemental jurisdiction over any lingering state-law claims; and DIRECTS the clerk to close the case.

SO ORDERED this 5th day of May, 2023.

RICHARD E. MYERS II
Chief United States District Judge

9

Case 5:22-ct-03401-M-RJ    Document 13    Filed 05/05/23    Page 9 of 9